Nott, J.,
delivered the opinion of the Court.
This is an action brought to recover $13,000 damages for building an embankment in the Memphis navy yard. There are two causes of action alleged : 1st, that while the embankment built should have been measured monthly, and each portion built during the month should have been measured by itself, the officers of the government made all their measurements from a fixed base, thereby throwing the continued and increasing waste and shrinkage of the parts already built and measured upon the contractor; 2d, that the officers of the government hindered and obstructed the claimant in the performance of his work, and injured the work as he performed it, by compelling him to dump earth in running water during an overflow of the river, by ordering his carts to take circuitous routes, and by using the unfinished embankment as a roadway and for building sites.
On the first trial in the case Judge Hughes held “ that the work, in the progress of construction, was at the risk of the contractor, until from time to time inspected, approved, and received, and then it was at the risk of the United States;” and he concluded “that the United States were liable upon a quantum, meruit for all materials thrown directly into a current of water by order of the government agents ;” and upon these grounds he found for the claimant the sum of $10,684 21. Judge Scarburgh concurred in the opinion that the contract “is a severable and not an entire contract;” but held that the contractor “ could claim nothing for the material used, but only for embankment made and delivered;” and he found for the claimant in the sum of $4,094 90. Judge Loring held that by the leading provision of the contract the United States should “ pay for a specific thing, a specific price;” that the specific thing was “an embankment containing 221,000 cubic yards,” and the specific price was “ eighteen cents per cubic yard;” that “ the shrinking and waste during the execution of the contract were to be borne by the contractor,” and that he was entitled to recover nothing.
On the second trial Judge Hughes adhered “ to the conclusions expressed in his former opinion,” and again found for the claimant $10,684 21. Judge Loring also adhered to his opinion, which gave *248 nothing to the claimant. Chief Justice Casey took a view of the question the exact opposite of that occupied by Judge Scarburgb, and held that the intermediate estimates were not to bo “ regarded as separate admeasurements of the work, but were estimates of its relative progress,” and that “ the final measurement of the work at the completion of the contract must determine the amount of embankment but that, for the yielding of the batture on which the embankment was built and for the material thrown in the water during the overflow, the claimant should recover; and he found for him in the sum of #3,480 66. Such is the troubled history of the case. The contract under which this work was done, and for a violation of which this action is brought, contains, among- others, the following provisions: That the said William Clark doth hereby contract and engage with the said Joseph S. Watkins as follows : that for the consideration hereinafter mentioned, the said William Clark will furnish all the material and make 221,060 cubic yards of embankment at the navy yard, Memphis, Tennessee, or so much as shall be required of hitn by the engineer or other duly authorized agent; the embankment to be made of clay, sand, gravel, or other good material, in such manner and places as shall be directed by the said engineer or other authorized agent. And the said William Clark doth further engage and contract to finish this embankment on or before the 15th day of July, 1847. * * * * That for the materials and embankment made, approved of, and received, and inspected as aforesaid, according to the terms and stipulations of this contract, there shall be paid to the said William Clark, or order, by the navy agent at Memphis, on account of all bills presented for the aforesaid materials and work delivered and executed, made out in approved form, authenticated by the certificate of the inspecting- officer or officers, and approved of by the commanding officer of said yard, the following price, viz : eighteen cents for every cubic yard. And it is hereby further stipulated by and between the parties hereto, that the department reserves to itself the right of diminishing or increasing the above-named quantity of embankment; and should the quantity be increased or diminished, the same price as is specified for the embankment shall be paid to the contractor, and no more. Mo other charge to be admitted nor allowance to be made by the United States for or on account of this contract, and ten per centum to be withheld from the amount of all payments on account thereof as collateral security, in addition to the bond given to secure its performance, and not in any event to be paid until it is in all respects complied with; and ninety per centum of the amount of all deliveries made will *249 be paid by the said navy agent within thirty days after bills duly authenticated, as aforesaid, shall have been presented to him.
In the examination which I now make, the first question that presents itself is with respect to the admissibility and competency of evidence. We are all agreed that the mass of matter transmitted with the petition by Congress, and printed as a part of the record in the case, is not thereby made evidence. On the contrary, we think that only such documents should be printed in such cases as are made by proper references in the petition a part of the petition, or such documents as may be agreed upon by stipulation between the parties, or such as the claimant deems to be properly authenticated, and desires to put in evidence.
A claimant may manufacture any amount of irrelevant testimony and present it to Congress, and Congress may transmit it as a part of his case to this court, but Congress does not thereby make irrelevant matter relevant, or enact'that incompetent evidence is competent; and there is neither necessity nor propriety in this court including in the printed record of the case testimony which we must immediately reject as inadmissible.
There may be documents among such transmitted papers that would be admissible if properly authenticated ; and such there appear to be in thÍ3 case; but inasmuch as these have been referred to in the three trials of the action, and inasmuch as the Solicitor of the United States has raised no objection to them, and, on the contrary, has used some of them as evidence, we must conclude that he is satisfied of their authenticity, or that some stipulation has been entered into between the parties which docs not appear upon the printed record. In other words, we accept as admissible such of these documents as we find to be relevant and competent evidence.
Under this ruling, and under previous decisions of this court, I admit as evidence—
1. The notice to contractors of July 20, 1845; and the contract of the claimant.
2. So much of the letter of the claimant to the Secretary of the Navy as was read by the Solicitor as an admission of the claimant.
3. The “ account for the ten per cent.,” and the receipts annexed.
4. The deposition taken regularly in the case.
And I exclude as irrelevant or incompetent evidence for the claimant all other matter.
*250 When this mass of irrelevant testimony is cleared away I have little difficulty in coming to the following conclusions :
1. The contract was for the building of an embankment, and not for the sale of loose earth.
2. There is nothing in the contract to warrant the assumption that the work was to be measured monthly. “ Payments on account” were to be made to the extent of ninety per centum “ within thirty days after bills duly authenticated” should be presented, but nothing is said as to the times when the measurements should be made.
3. In the silence of the contract, the law concludes that the embankment was to be of the ordinary kind, and the measurements to be made in the ordinary way. Although the claimants were eutitled to frequent measurements, it by no means follows that those measurements were to he made in an extraordinary manner. Measuring from a fixed base may be the ordinary and proper method of estimating embankments when the measurements are to be made at frequent periods. In this case the report of Engineer Warford shows affirmatively that it was the proper and ordinary method, and the claimant has neglected to show that it was not. In the absence of evidence to the contrary, we must conclude that it was.
' 4. The damages caused by the commandant interfering with the claimant’s carts, compelling him to dump earth in the water during an overflow, and using the embankment as a roadway, as shown by the witness Korex, were suffered after the 15th July, 1847, the day when the embankment was to have been completed, and consequently after the contractor was in default. The similar acts mentioned by the witness Hogan are not established with respect to time, and all are so loosely stated that it would be impossible to compute the amount of damages resulting therefrom, if the claimant were not in default.
5. If the claimant were entitled to recover for the amount lost by the natural sinking of the batture on which the embankment was built, there would be no evidence on which to found a judgment. The fact of its sinking rests on the opinion of witnesses; the extent to which it did sink is not shown by a particle of evidence. Ho computation of damages can be made from such a failure of proof.
It is, therefore, my opinion that, with regard to the contract, the claimant is mistaken in the construction he has placed upon it, and that with regard to the matters he has set up asa violation of the contract by the United States, there is a failure of proof.
Mr. McOalla for the claimant.
Mr. KETCHAM.tho Solicitor, and Mr. Weed, the Assistant Solicitor, for the government.
The decision of the court is that the claimant should not recover, and judgment should he for the defendants.
The following is the opinion delivered by Judge Loring, on the first trial of the case, February 11, 1861:
I am obliged to dissent from the opinion given. I think the leading provision of the contract, and therefore its leading purpose, is, that the United States shall pay for a specific thing a specific price. The specific thing is an embankment containing 221,000 cubic yards, and the price is 18 cents per cubic yard; so that all the United States were to pay for the thing contracted for was 221,000 times 18 cents— $39,7S0. If this were not so, and they had to pay for the shrinking and waste during the execution of the contract, then, as these are indeterminate, they would have to pay some indeterminate amount beyond that stated, and the specifications of the quantity and price would be useless.
Therefore, I think that, on the construction of the contract, the shrinking and waste during the execution of the contract is to be borne by the contractor, and that the mode of admeasurement adopted by the United States was correct.
The contract contemplates that payments should bo made occasionally during the progress of the work; but this is usual in the contracts of the United States, and is for the convenience of contractors, and the provisions for it are to be construed in reference to that only. Then here those provisions expressly state that such payments are to be “ on accoimt” of the contract, and thus indicate that they are to be made subject to a final settlement, and not as payments, each, of so much work done. Then these payments are to be on the certificate of the inspecting officer and on his admeasurement; and, as no mode of admeasurement is prescribed by the contract, he was free, of the two modes of admeasurement, to take that which would fulfil the purpose of the contract, and give the United States 221,000 cubic 'yards of embankment for $39,780 when the work was done.
It is also observable that in the subsequent contract for the same work, put in evidence by the petitioner, similar provisions for occasional payments are made, with an express provision that the shrinkage and waste are to be borne by the contractor. The two things, there *252 fore, are not incompatible, nor are they unnsal; for Mr. Warford, the engineer in charge of the work, in his report to the department, (put in evidence by the petitioner,) says: “ In the absence of anything in the contract to the contrary, the work done by Mr. Clark has been measured according to the common custom which prevailed on the various public works upon which the. undersigned has been engaged for a period of about a quarter of a century, and in accordance with the method known to have been practiced in some places where .he was not engaged. On all the public improvements of which the undersigned has any knowledge the amount paid for was what the contractors’ work measured at the time of the completion of the contract.” (P. 16.)
I am of opinion the petitioner is not legally entitled to the relief he claims.