The CHIEF JUSTICE
 

 delivered the opinion of the court.
 

 In Avar-the public property,of an enemy captured on land becomes, for' the time being at least, the property of the conqueror. No judicial proceeding is necessary to pass the title. Usually the ultimate ownership 'of real property is settled by the treaty of peace, but so long as it is held and not surrendered by a -treaty or otherwise it remains the property of the conqueror.
 

 This well settled principle -in the law of war 'was recog nized by this court in
 
 United States
 
 v.
 
 Huchabee,
 

 *
 

 as applicable to the late civil war. At the close of that war there was no.treaty. When the .insurrection was put doivn \the government of. the insurgents was broken up, and there was no,
 
 *482
 
 power to treat with. lienee tli'e title to all captured prop-, erty of the Confederate government then became absolute in the United States.
 

 Titus, however, claims as an informer under the act of 1861. This act provided, in substance, that if, durnig the-(then) present or any future’insurrection against the government of the United States, any
 
 person
 
 should, after the prescribed proclamation, purchase or acquire, sell or give, any property of whatsoever kind or description, with intent to use or employ the same, or, suffer this same to be used or employed, in aiding or abetting or promoting such insurrection ; or if any
 
 person,
 
 being the owner of-such property, should knowingly use or employ, or consent to the use or employment, of the same for such purpose, all
 
 such
 
 property should be lawful subject of prize and capture wherever-found, and the President was required to cause' it to be seized, confiscated, and condemned. The proceedings for condemnation were to be had in the courts of the United States having jurisdiction of the amount, or in admiralty in any district in which such “prizes and capture''- might be seized) or into which, they might be taken and proceedings first instituted. The Attorney-General, or the district at-, torney of the United States for the district in which the property might at the time be, was1 authorized to institute the proceedings of condemnation, and, in such' case, they were to be wholly for the benefit of the United States;’ or 'any person might filé an information with such attorney, and then the proceedings were to be for the use of. an informer and tire United States in equal’parts.
 

 Clearly this act was intended for private, not public property — for such property of persons as required, under the laws of war, a judicial sentence of condemnation to divest the. title of its owner, — not such property of á hostile government as had already been captured by an army and subjected to the complete and undisputed dominion and ownership of the conquering power. It applies; as will be seen,' to all property, personal as well ,as reál. Not only to a' laboratory in which'ammunition is prepared, but to the am
 
 *483
 
 munition itself; not to armories simply, but to their product. If the laboratory, owned by the hostile government, when captured in the progress of the war and held by the army, can be informed against-and condemned for the benefit of the informer and'the United States, so also can the ammunition prepared therein and captured in battle. If the armory; then the gun. Once incorporate this statute, with such a construction, into the law of war, and the attention of the soldier in battle will be divided'between the capture of arms, ammunition, and stores on the field, and the search for a district attornej7 with whom to lodge a statutory information, and demand, as a matter, of right* a proceeding in the court for its condemnation on the joint account of himself and the government in whose service he is. We doubt if. the counsel for the informer in this case, who lias so earnestly and' so ably advocated the cause of his client here, would be willing to enlist himself in behalf of such a claim, and yet it is difficult,to see how, if he succeeds in this,-he might not in that.
 

 An informer, to entitle himself'to the statutory reward for his service, must inform against property which is the subject of-judicial condemnation. There can be nothing to divide if there is nothing to condemn. In this case the land, when informed against, was already the property of the. United States. The title had passéd by the completed conquest. There was nothing to reach .by judicial process. Information, in the statutory sense, could do no good. The property, had been devoted to the war and followed its fortunes. The capture was the result of many battles, but it was none the less, on that account, captured property, needing no judicial sentence of forfeiture to make it absolutely the property of the United States.
 

 But it is claimed that the United States are estopped by the proceedings.of condemnation instituted, as they were, in behalf of itself and an informant, from denying, as against the informer, that the property in question was the subject of forfeiture on joint account under the act. There is no . pretence that there was any claim,.adverse to the title of the
 
 *484
 
 United States as conqueror, that was, or could be, cut'off by the judgment of the court. It will hardly be contended, we think, that if, after the close of the war, an information' had been filed with the'district attorney against the Charleston ■ custom-house, and he had proceeded to have it condemned under the act, the United States would be estopped from objecting to the claim of an informer, for one-half its value, and yet the- custom-house, although owned by the United States before the war, was no more its propertj1' at the close than was the laboratory informed against in this" case, if the statements in the record "are true.’ The very libel of information, filed by the district attorney, shows upon its face ihat the title of the United State's was then complete, and the fair inference from the petition of Titus, to be made a party to the cause is, that the case made by the libel is the same as that he presented to the attorney for proceedings.' .Certainly the United States are not prohibited from asserting, as against the informer, that the case he brought to its consideration, and upon which it acted, was not one in which he could be interested.
 

 But it is further claimed that there is an estoppel in favor of this informer because the Commissioner of the Freedmen’s Bureau omitted to appehr and Resist the judgment of condemnation, and, after the sale was made, applied for and received from th.e court one-half the proceeds.
 

 The act of July 16th, 1866, gave the. commissioner of that bureau-the control and management of property of the character proceeded against, for certain purposes specified, but in this he was only the agent of the United. States. His burefiu was the- department of the government authorized to mauage-the trust to which the property had been devoted. He is not estopped if the United States are toot, and his neglect to appear and .defend against the proceedings can certainly have no more effect against-the United States than the institution of the original proceedings.
 

 Neither was an estoppel created by the receipt of the purchase-money. The order in favor of the informer was made on the 8th April, 1868, and the property remáined unsold
 
 *485
 
 until December 7th, 1869. On the 19th April, 1870, the commissioner made his application to the -court for the money. One-half the proceeds was all he could ask for, so long as the judgment’in favor of the informer remained in force. This he applied for and received, and on the 2d May the proceedings now under consideration were commenced to set aside that judgment. Certainly, under these circumstances, it cannot be said that, even if lie had the power to do so, the commissioner has yielded the claim of the government to the money which had been adjudged to the informer.
 

 Very different questions, and very different principles of estoppel, will have to be considered if the United States or the commissioner shall ever attempt to assert title against the purchasers at the sale. They claim under, the sale, and have paid their money in consequence of the offer of the United States to sell in that way. The informer stands in no such position. He has parted with nothing he ever had. He stands upon the original title. If, when he informed, the United States had no title, and through his information one was acquired, he is entitled to the statutory reward for his service. But if the Uuited States had then a perfect title and nothing could-be added to it by reason of his in-, formation, he has done nothing for which the statute, has provided a reward. Whether he should be paid for furnishing the government with information by which it has been able to make its conquest available, is a question we are not called upon to consider. We deal with him only as an informér under the statute, and as such he has no standing in' court.
 

 In the view we have taken of the case it is not necessary to consider w'hether the District Court erred iu permitting Titus to become a party to the -proceedings after the judgment ot‘ condemnation had been entered, and all, chances’ of liability for costs had been resolved iu his favor.
 

 Judgment affirmed.
 

 *
 

 16 Wallace, 434.