Richardson, Ch. J.,
delivered the opinion of the court.
In each of these cases a motion is made to present for determination the question of admissibility of certain evidence offered on the part of the claimant.
One of the cases comes before the court upon the voluntary petition of the claimant, under Revised Statutes, section 1059; the other two by transmission from committees of Congress, under the Bowman Act (March 3, 1883, chap. 116, 22 Stat. L., 485).
Claimants frequently cite the language of section 1063 of the Revised Statutes and of sections 1 and 2 of the Bowman Act, identical in all three, requiring the head of a department or a committee of Congress sending a case to this court to transmit with it “ all the vouchers, papers, proofs, and documents pertaining thereto,” as though it relaxed the rules of evidence and rendered admissible all the papers and documents died in a case before the department or the committee for the purpose of establishing the facts recited therein.
It has uniformly been held that the rules of evidence apply to the trial of cases in this court precisely as they do in other courts of the United States, except that in cases under its general jurisdiction parties and persons interested in the support of a claim are excluded as witnesses by express statute (Rev. Stat., section 1079). From that exception claimants and persons interested under the District Claims Act (1880, June 16, ch. 243, section 4, 1 Supplmnt. R. S., 563) and under the Bowman Act (1883, ch. 116, section 6, 22 Stat. L., 485) are relieved by the terms of those acts.
In Moore’s Case (91 U. S. R., 270, and 11 C. Cls. R., 97) the Supreme Court say, on the subject of the rules of evidence in the Court of Claims:
“ The question is, by what law is the Court of Claims to be governed in this respect ? May it adopt its own rules of evidence, or is it to be governed by some system of law ? In our opinion it must be governed by law, and we know of no system *221 of law by which it should be governed other than the common law, that is, the system from which- our judicial ideas and leg'll definitions are derived. The language of the Constitution and of many acts of Congress could not be understood without reference to the common law. The great majority of contracts and transactions which come before the Court of Claims for adjudication are permeated and are to be adjudged by the principles of the common law. Cases involving the principles of the civil law are the exceptions. We think that where Congress has not provided and no special reason demands a different rule, the rules of evidence as found in the common law ought to govern the action of the Court of Claims. If a more liberal rule is desirable, it is for Congress to declare it by a proper enactment.” (See also Blewett’s Case, 10 C. Cls. R., 235; affirmed on appeal, 13 C. Cls. R., 556; Clark’s Case, 96 U. S. R., 37; the Chester Owner’s Case, 19 C. Cls. R., 681.)
It is a matter of common knowledge in connection with the business of Congress and the departments that parties present their claims there with ex parte affidavits, letters, and documents, not under oath, and other irrelevant and incompetent evidence. (MoKnight’s Case, 13 C. Ols. B., 310.)
The Committee on Claims of the House of Bepresentatives, in their report upon the Bowman bill, July 26, 1882, called attention to this fact as one of the great evils which required action by Conress, and it was with the view of correcting it that provision was made for the transmission of cases to this court, where they could be tried upon relevant and competent evidence alone, according to the established rules of law.
The requirement of the Bowman Act that with every claim “ the vouchers, papers, proofs, and documents appertaining thereto” (adopted from Bevised Statutes, section 1063) should be transmitted to this court, was not made for the purpose of changing the rules of evidence followed in courts of law, and of perpetuating here the very evils which were deprecated in the investigation of claims by committees of Congress. The object evidently was to transfer from Congress everything brought there in relation to the claim, without subjecting the committee to the duty of examining all the papers and passing upon the competency or relevancy of each one of them as legal evidence. That duty was known to be the proper province of the court, and could be better exercised when issues were joined between the parties and arguments were heard on the one side *222 and the other in the judicial tribunal to which the mattérs were committed.
Twenty years ago the court said, in Clark v. The United States (1 C. Cls. R., 249) and in McKee’s Case (1 C. Cls. R., 336), what is just as applicable to the present cases as it was to those then under consideration:
“We are all agreed that the mass of matter transmitted with the petition by Congress and printed as a part of the record in the case is not thereby made evidence. On the contrary, we think that only such documents should be printed in such cases as are made, by proper references in the petition, a part of the petition, or such documents as may be agreed upon by stipulation between the parties, or such as the claimant deems to be properly authenticated and desires to put in evidence.
“A claimant may manufacture any amount of irrelevant testimony and present it to Congress, and Congress may transmit it as part of his case to this court, but Congress does not thereby make irrelevant matter relevant or enact that incompetent evidence is competent, and there is neither necessity nor propriety in this court including in the printed record of the case testimony which we must immediately reject as inadmissible.”
To the consideration of the motions now before us we have only to apply the ordinary rules of evidence.
In Brannen’s Case the Assistant Attorney-General moves to-strike out of the printed record, and not to admit as evidence^ the proceedings of a board of officers of the Army appointed to investigate the claims in controversy.
It appears by the petition that the claimant seeks to recover damages for breach on the part of the defendants of a written contract made with him by an assistant quartermaster of the Army, at Camp Grant, in Arizona Territory, in 1876. The demands are therein alleged to be founded upon the following items :
“ 1. Loss of time of the‘hands ’ in the employ of claimant who were kept idle by said defaults of defendant, but whom claimant was, notwithstanding, comxielled to pay for the time so by them lost.
“2. Loss of adobe walls destroyed by rain, owing to the failure of defendant to supply logs, &c., as stipulated, out of which to cut lumber for the protection of such walls.
“ 3. Loss of claimant’s own time resulting from said breaches.
“ 4. Damages inflicted on claimant through the defendant’s- *223 said breaches, rendering it impossible to keep claimant’s contracts with subcontractors, to whom claimant was compelled to pay damages.
“ 5. Loss of profits which resulted to claimant by reason of said breaches of contract by defendant, whereby claimant was compelled to give up said contract before its completion.”
The same claims were made in 1877 to the officers in command at Gamp Grant and the military department of Arizona. The assistant adjutant-general there appointed a board of officers “ for the purpose of making a thorough investigation and report respecting” the losses alleged to have been sustained by the claimant. The board met, took the testimony of the claimant and other witnesses in writing, and reported the same in full in the proceedings, together with their “ opinion ” that the sum of $300 was a fair estimate for Mr. Brannen’s losses by damage done to foundations and adobe walls for want of lumber to cover them. As to all the other claims the board was of the opinion that nothing should be allowed to him.
These proceedings were forwarded to the War Department, and the following indorsements appear upon them :
“ Qtiabtebmasteb-Genebal’s Oeeice,
“Washington, July 6, 1877.
“ ^Respectfully submitted to the honorable Secretary of War.
“ There is no authority in any executive officer to allow claims for damages on contracts. * * *■
“ M. 0. Meigs,

“Q’rm’r-General, Bvt. May. Gen’l, U. S. A.

“ The views of the Quartermaster-General are approved.
“Geo. W. McGbaby,
“ Secretary of War.
“ Wae Depabtment, July 16,1877.”
General Meigs was unquestionably correct in his opinion, approved by the Secretary of War, that no authority exists in any executive officer to allow claims for such damages on contracts. This court has so held in many cases. (Hart’s Case, 15 C. Cls. R., 427; Power’s Case, 18 C. Cls. R., 263, and cases there cited ; Dunbar’s Case, 19 C. Cls. R., 493; McClure’s Case, 19 C. Cls. R., 28, 179.) It has long been so understood by accounting officers of the Treasury. (Digest of Decisions of the Second Comptroller, A. D. 1860, sections 458-464; also vol. 2, A. D. *224 1885, sections 253, 381, 382.) Several Attorneys-General have so advised. (4 Opin., 327, 627; 6 Opin., 516; 14 Opin., 24, all cited and commented on in McKee’s Case, 12 C. Cls. R., 556.) See also Dennis'’s Case, ante, p. 119, where is stated the distinction between this and another class of cases, of which, though technically for unliquidated damages, the accounting officers have jurisdiction.
The proceedings of the board come to the court in response to a call upon the War Department, made under Bevised Statutes, section 1076, at the request of the claimant, in whose behalf it is now urged that they are admissible, either to establish an award of $300 in his favor or to prove the facts by the testimony there recorded of witnesses alleged to be dead or beyond the jurisdiction of the court.
Such a board cannot be regarded as one of arbitration in any sense whatever. It was an ex parte appointment of Army officers to make investigations and report to their superiors, and its conclusions are nothing more than expressions of opinion.
But if the proceedings were intended by the officers concerned as an arbitration,- and had the form of one, they would be wholly without force or effect. It has not yet been finally determined how far executive officers haviug authority to settle and adjust controverted demands against the government can bind the latter by auy form of submission to arbitration. (Great Falls Man. Company Case, 16 C. Cls. R., 160; 112 U. S. R., 645.) But nothing can be clearer than that such officers have no authority to biud the United States by the arbitration of claims over which they themselves have no jurisdiction.
Nor can the testimony taken before that board be used in actions at law between the same parties to prove the facts sworn to by witnesses since deceased or beyond the jurisdiction of the court. The whole proceedings were extrajudicial and the testimony was coram nonjudice, circumstances which are sufficient to exclude such use of the evidence thus taken. (1 Wharton on Evidence, section 177.)
The motion of the Assistant Attorney-General is allowed.
Bumbauglfis Case was transmitted to the court by a committee of the House of Bepresentatives. The claimant is the widow of Dr. George II. Bunibaugh, deceased, who was a captain in Company K of the Twenty-fifth Begiment Missouri Infantry *225 Volunteers, and at tbe battle of Shiloh, being assigned to duty as acting assistant surgeon, it is alleged that he lost his horse and .equipments, April 6, 1862, without fault on his part, for which payment is now asked of the government.
The claimant’s attorney moves to admit as evidence the certificates of certain officers of the regiment made to their superiors at or about the time of the loss. The counsel for the United States concedes, without argument, that they come within the rule laid down in Gordon's Case (6 0. 01s. B., 294), and upon such concession they are admissible. In that case the.court said:
“ The official contemporaneous reports and communications of public officers, made in the line of their duty, before the controversy between the parties began,-this court has always admitted in evidence for what they are worth. * * * Such reports, when admitted, are open to explanation and contradiction, and are received with caution and taken only for what they are worth.”
The claimant’s motion is allowed, and the evidence will be admitted, subject to the usual rules in such cases.
. Gaskins’s Case was transmitted to the court by the Committee on War Claims of the House of Bepresentatives. The claimant alleges that in 1864 he was drafted into the military service of the United States in Kentucky; that in order to obtain relief therefrom he was compelled to pay to the United States, through a provost-marshal, the sum of $300, and that he was not liable to draft.
The Assistant Attorney-General moves the court to strike from the record and refect as evidence of the facts therein recited two reports upon the subject-matter of the claim made, one by a brevet colonel of the Army, May 1,1869, and the other by an assistant adjutant-general, June 24, 1879.
While the reports of public officers to their superiors, in the regular and ordinary course of their duties, upon matters coming within their own observation or knowledge, made at or near the time of the occurrences, are admitted in evidence as part of the res gestee, and are accorded such weight as the court deem them entitled to under all the circumstances, the reports of persons after they go out of office, or while in office long after the events took place, or upon facts not within their own observation or knowledge, but reciting the results of their exam *226 inations and research, are never received as evidence of the facts which they purport to set out.
The reports offered in this case clearly come within the latter class, and must be rejected. The defendants’ motion is allowed.
Davis, J., sat in the motion in Brannen’s Case.