Nott, J.,
delivered the opinion of the court:
The claimants move the court to insert in the findings matters which have been adjudged to be incompetent evidence and facts which are irrelevant to the legal conditions of the case.
The findings of fact in appealable cases are simply to present to the appellate court the questions of law involved in the case. The court above is interested in no other question. The findings go up amplified by the pleadings of the parties and the opinion of the court below. They receive in the court above the comments and criticisms and explanations of counsel. No legal right is determined until the appellate tribunal has received that most effective aid to the administration of justice which is embodied in the arguments of contending advocates representing the adverse parties, whose legal rights will be affected by the final decision.
The findings of fact in Congressional cases are to inform the legislative authority of those things which are necessary for the convenient exercise of the legislative intelligence. They are not based on a judicial controversy; they are not amplified by the pleadings of the parties; they do not carry with them a judicial opinion setting forth the law applicable to the issue; they do not present to Congress for review a legal decision affecting any legal right; they determine nothing judicially. Congress, when considering them, do not have the benefit of opposing counsel to contest the claims of the petitioners and defend the interests of the United States. If either party is heard, it is the claimant; if either party is unrepresented, it is the Government.
It therefore behooves the court, when preparing these findings for Congress, to so frame them that they shall give rise to no misunderstanding of the legal or equitable conditions of the case. It is also the duty of the court to so frame them *267 that they shall not necessitate in Congress a needless investigation and discussion of irrelevant questions of law. The purpose of the Bowman Act is expressed in its title, “An act to afford assistance and relief to Congress and the Executive Departments in the investigation of claims and demands against the Government.” It is not the purpose of the act that the court shall assist claimants to present only their side of a case to Congress; and assuredly not to present it through the distorting medium of an erroneous legal theory having the apparent sanction of a judicial tribunal, when in fact no such sanction is intended. The end and object of these findings in Congressional cases is to present the material facts and circumstances properly connected with a claim in such a form that the petitioner’s case will be ready, without further investigation, for the exercise of the legislative discretion.
To the end of presenting a case to Congress so that it shall then be ready for the exercise of the legislative discretion, the court should carefully refrain from finding facts which imply that a legal right was impaired when, in the opinion of the court, no such legal right existed. While it is not the object of the findings to present questions of law for judicial determination by the legislative power, they may show for the convenience of Congress the relations of the facts to the law and advert to the law which will be applicable to the facts; and they should do so whenever a statement of the law applicable to the asserted legal rights of the petitioner is necessary to a clear and unmistakable understanding of the facts.
The cases transmitted to this court by Congress are, as a general rule, founded directly or remotely upon an asserted constitutional, legal, or equitable right. The petitioner conies to Congress alleging that he possesses, or has possessed, a right for which no judicial remedy exists, and appealing to Congress for that redress which upon constitutional, legal, or equitable principles he is in justice entitled to receive; and Congress refer his petition to this court for the ascertainment of those alleged rights by judicial proceedings. The determination of what are the facts relevant to the asserted rights will undoubtedly involve the exercise of the judicial function, just as the determination of what is or what is not competent evidence to establish the facts must involve decisions on points *268 of law5 and to aid Congress in tbe investigation of claims and demands against tbe Government tbe judicial function must .be exercised in tbe one case as well as in tbe other. To tbis extent Congress bave made tbis court, in tbis class of cases, a court of last resort.
Tbe petition to Congress in tbe present case is no exception to tbe .general rule. Tbe petitioners set up in effect tbe deprivation of a legal right. They aver tbe capture of their cotton, tbe finding of a military board that it was their cotton, and the turning over of their cotton to one Nolan to reimburse him for cotton which bad been taken from him to case tbe gunboats running tbe batteries of Vicksburg. Tbis was tbe claim transmitted to tbis court by Congress. Tbe court can not make another claim than that which tbe petitioners presented and which Congress transmitted.
Tbe essential facts in the present case which establish or tend to establish tbe legal or equitable rights asserted by tbe claimants, and upon which tbe legislative discretion may or may not be exercised, as shall seem just to Congress, in tbe opinion of tbe court, are these:
Tbe claimants, being domiciled in Mississippi and Tennessee, were, in tbe eye of tbe law, at tbe time of the seizure of their cotton, enemies; and tbe cotton, then situated in Mississippi, was, at tbe time of its capture, enemy’s property. (Hamilton v. Dillin, 21 Wall. R., 73.) The capture was made by a military expedition in hostile territory, and was a lawful capture. (Young v. United States, 97 U. S. R., 39.) So soon as tbe cotton passed into tbe possession of tbe United States bylawful capture tbe only right which tbe owners possessed or could possess was that of having tbe property disposed of according to tbe provisions and requirements of tbe abandoned or captured property act. (Haycraft's Case, 23 Wall. R., 81.)
That statute imperatively provided:
“ That it shall be tbe duty of every officer or private of the regular or volunteer forces of the United States, or any officer, sailor, or 'marine in tbe naval service of tbe United States upon tbe inland waters of tbe United States, who may take or receive any such abandoned property, or cotton, sugar, rice, or tobacco, from persons in such insurrection ary districts, or bave it under bis control, to turn tbe same over to an agent appointed as aforesaid, who shall give a receipt therefor; and in case be shall refuse or neglect so to do, be shall be tried by a court-martial, and shall be dismissed from tbe service, or, if an *269 officer, reduced to tlie ranks, or suffer suck other punishment as said court shall order, with the approval, of the President of the United States.” (12 Stat. L., p. 820, sec. 6.)
And that—
“The Secretary of the Treasury * * # shall also cause a book or books of accounts to be kept, showing from whom such property was received, the cost of transportation, and proceeds of the sale thereof. And any person claiming’ to have been the owner of any such abandoned or captured property may, at any time within two years after the suppression of the rebellion, prefer his claim to the proceeds thereof in the Court of .Claims, and on proof to the satisfaction of said court of his ownership of said property, of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, to receive .the residue of such proceeds, after the deduction' of any purchase money which may have been paid, together with the expense of transportation and sale of said property, and any other lawful expenses attending the disposition thereof.”
None of these things were done. The cotton was retained in the hands of the military notwithstanding the provisions of the statute. In the execution of an order directing that 600 bales of G-overnment cotton be delivered to one "James Nolan, in payment of his claim against the United States for cotton seized and used for military and naval purposes, the officer having charge of captured cotton at Vicksburg turned over to him the cotton alleged to belong to the claimants. By this illegal act the claimants were deprived of their legal right to have the cotton turned over to the agents of the Treasury and sold, and the proceeds paid into the Treasury, and to establish in the Court of Claims their loyalty, ownership, and right to the proceeds. The resulting question, which can not be determined judicially, but is a fitting subject for legislative discretion, is whether the Government shall assume responsibility for the illegal act of the officer, inasmuch as the cotton of the claimants satisfied the alleged claim of Nolan, and discharged a possible liability of the United States to him; and if so, whether there shall be paid to the claimants for this deprivation of their right an amount equal to the probable proceeds which would have reached the Treasury, or such other amount as may seem reasonable to Congress.
As to the matters now brought before the court by the claimants’ motion something should be said.
*270 (1) The proceedings of the military board, which the claimants seek to have inserted in the findings, are not, as their counsel contends, “conclusive upon the United States.” It has been repeatedly held that the decisions of these military boards bind neither party; and that their proceedings are not competent evidence to establish the facts in issue in a civil case. (Brannen’s Case, 20 C. Cls. R., 219, and cases cited.)' In this instance the military board was without jurisdiction to try the question of the claimants’ loyalty or to establish their ownership in the property or to determine their right to it or its proceeds. That jurisdiction was specifically vested in this court by statute, and the Supreme Court has decided that it was exclusive. (Haycraft’s Case, supra, and 10 C. Cls. R., 95.)
(2) The order of General Grant designating the country “west of the Mississippi Central Railroad” as within the United States military lines in August, 1863, and calling upon citizens within that district “ to pursue their peaceful avocations in obedience to the laws of the United States,” and assuring them that their rights to property would be protected, did not describe the condition at the place of capture in February, 1864. That part of the country was then overrun by guerrillas and practically within the Oonfederatelines. Neither could the order of a commanding general change the legal character of the situation, nor make that national territory which was in law hostile. After the proclamation of the President had declared the State of Mississippi to be in a condition of armed rebellion, nothing less than the proclamation of the President could change its legal character. Heflebower’s Case, 21 C. Cls. R., 228.)
(3) The permit issued by the special agent of the Treasury at Memphis, and the attempts of Topp & Vance to bring in cotton, are irrelevant to the claimants’ rights as set up in their petition to Congress and to a proper consideration of the case. The regulations of the Treasury only gave to the person who received the license' an assurance that his cotton should be exempt from seizure when brought in or when in transitu toward the place of delivery. They did not impress upon the property a new character exempting it from military capture before the owner had moved it, nor bind the hands of the Government as a belligerent so that property which was then one *271 of tbe sinews of war should be left where the enemy could seize or destroy it.
(4) The military instructions given to the commanding officer of the Yazoo expedition defining its object do not affect and can not enter into a consideration of the claimants’ rights. In some cases such instructions might be essential to show that the officer acted under proper authority; but in this case the capture was authorized by law, and the rights of the claimants depend wholly upon the pledges and assurances given to loyal citizens by the abandoned or captured property act.
(5) The extracts from the price current of a New Orleans newspaper showing the prices of cotton on the first day of several months in 1864, which the claimants asked to have sent to Congress as a finding of facts, are not facts, but evidence. Furthermore, the price current referred to was not established in this case by competent evidence, but the value of the cotton as fixed by the courtwas shown by a person who bought and sold cotton at the time in Vicksburg and in New Orleans, and who was one of the claimants’ own witnesses.
Finally, the court is of the opinion that to insert in the findings these matters which have no legal relevancy to the case that the petitioners presented when they asked for legislative redress, and which may lead to a misapprehension of the legal conditions of the case and of the views of the court in regard to the rights of the claimants can not ‘‘afford assistance and relief to Congress” “in the investigation of this claim against the Government.”
The motion of the claimants to change the findings in the matters above referred to is overruled, but an amended copy of the findings is now filed, which will be reported to Congress, together with a copy of this opinion.