Peck, J.,
delivered the opinion of the Court.
The legal representatives of George Fisher, deceased, by their amended petition, represent that during the lifetime of the said George Fisher, and in the year 1813, a large amount of his property in Florida was taken or destroyed by the troops of the United States. That before his decease the said Fisher made application to Congress for compensation for the loss and destruction of his property. That after his decease this application was renewed by his legal representatives. That after a delay of several years, and in the year 1848, Congress *2 passed an act for the relief of such legal representatives, authorizing and requiring the Second Auditor of the Treasury Department to examine and adjust their claims on principles of equity and justice, having due regard to the proofs for the value of the property taken or destroyed; providing that the said legal representatives should be paid for the same out of any money in the treasury not otherwise appropriated. This law also enacted, that if it should be found impracticable for the claimants to furnish distinct proof as to the specific quantity of property taken or destroyed by the troops and by the Indians, respectively, it should be lawful for the said accounting officer to apportion the losses caused by said troops and Indians, respectively, in such manner as the proofs should show to be just and equitable, so-as to afford a full and fair indemnity for all losses occasioned by the troops; but nothing was to be allowed for property destroyed by the Indians. (See Stat. at Large, p. 712, vol. 9.)
That this act of Congress was accepted by the claimants, and that the Auditor proceeded to examine and adjust the claims under it. That the Auditor refused to receive and consider certain depositions and proofs presented by the claimants because he did not consider them properly authenticated. That the Auditor made what the petition states to be “an award” on the 22d of April, 184S, allowing one-half of the value of such property, as lie considered the proof established, had been lost or destroyed, assuming, as is alleged, that onelialf of the loss and destruction was occasioned by the Indians, and not by the troops. This award amounted to $8,873, and did not, as is alleged, include interest or compensation for the losses and injuries sustained.
That in December, 1S48, the Auditor (at whose instance does not appear) reconsidered the case, corrected an error in calculation of one hundred dollars in favor of the claimants in his former repoit, and allowed interest on the amount as corrected by him, being $8,973 from 1832, the date of the first application for relief to the date of the allowance in 1848, which interest amounted to $8,997 94. Not yet satisfied, the complainants demanded interest from the time of the loss until the award at the rate of interest allowed in Florida. What that rate was does not appear. This renewed controversy was submitted by the Auditor and the claimants to the Attorney General, who gave an opinion that interest at the rate of six per centum should be allowed from the date of the loss to the time of the allowance. Upon this a further allowance of interest was made by the Auditor, amounting to *3 $10,004 89. All which allowances were granted under the original act of April 12, 1848, and were paid to the claimants as fast as the Auditor furnished his statements.
The claimants, still feeling aggrieved, renewed their application to Congress, and asked relief from the ruling of the Auditor, complaining that he had excluded certain depositions, which he deemed not properly-authenticated.
Thereupon, on December 22,1854, Congress passed a supplemental act, directing the Auditor to re-examine the case, and to allow the claimants the benefit of the depositions theretofore marked “rejected for the want of authentification,” provided they were then legally authenticated, the adjustment under this supplemental act to be made in strict accordance with the previous act.
"What steps, if any, were taken under this supplemental act by the Auditor are not stated.
On the 3d of June, 1858, a joint resolution was passed, devolving upon the Secretary of War the execution of the supplemental act above referred to, directing him to proceed de novo to execute the act and its supplement' according to their plain and obvious meaning, but to deduct from any amount which might be found justly and equitably due to the claimants all sums which had been previously paid.
The Secretary of War proceeded to examine the case, and estimated the value of the property destroyed, and taken at a sum higher by $168 than the Auditor had done; but he also found that all the property had beén destroyed by the troops, and none of it by the Indians. Thereupon he allowed for the entire value of the property, instead of half its value, and added interest from the date of the destruction, making the further sum of $39,217 50. This sum was also paid to the claimants.
Still dissatisfied, another petition was presented by these claimants to Congress, and on the 1st of June, 1860, another joint resolution was passed, authorizing and requiring the Secretary of War to revise his execution of the supplemental act aforesaid, and on said revision to give effect to all the testimony filed, including the depositions formerly rejected by the Auditor, and to re-state and re-settle the account, and to make such corrections in his former statement and settlement, and such further allowances, if any, as, in his opinion, justice to the claimant should require.
That the Secretary of War did revise his statement and re-settle *4 the account; and on the 23d of November, 1860, stated his conclusions in favor of the claimants, making a further allowance of $66,519 85.
The object of the petition is to obtain from this court a judgment for this further allowance of $66,519 85.
It also appears that on the 2d of March, 1861, Congress passed a joint resolution declaring the resolution of the 1st of June, 1860, under which the Secretary of War had made the last allowance, rescinded, and pronounced the same and all the proceedings under it null and void.
This repealing resolution, the petitioners aver, was passed without their knowledge or consent, or without notice to them, and that by reason of it they have not been paid; .also insisting that it is inoperative, unauthorized, and void without power to affect the second allowance of the Secretary of War, which, they insist, had vested in them a right beyond the reach of Congress.
This petition was demurred to by the solicitor upon the ground that it does not show a valid subsisting claim against the United States.
■ If the principle contended for by the claimants is correct, that every direction by Congress to an accounting officer, commanding him to state or re-state an account, and to come to such conclusion in regard to it as, in his opinion, justice to the claimant shall require, is, in effect, a submission to the arbitrament of such officer, whose statement is 'to bind the government, while it may not conclude the claimant, the former becomes an unequal contestant, and that mutuality of obligation which the law implies shall always exist in matters of arbitration is wanting, and new rules will be required to conform to this new theory.
This case presents the anomaly of several different awards, which, if we recognize the principles contended for by the claimants, were each final and conclusive against the United States; but by none of which did the claimants consider themselves bound, or in any degree restrained. Should the re-statement of the accounts by the Secretary of War, under the resolution of June 1,1860, now be held obligatory, these one-sided liabilities controlling one party and not the other, if this case should become a precedent, may continue without end.
The majority of the judges believe that the various acts and resolutions of Congress in this case emanated from a desire to do justice, and to obtain the proper information as a basis of action, and were not intended to be submissions to the arbitrament of the accounting *5 officer. They were designed as instructions to the officer by which to adjust the accounts, Congress reserving to itself the power to approve, reject, or rescind, or to otherwise act in the premises as the exigencies of the case might require. In other words, these references only required the officer to act in a ministerial, not in a judicial capacity.
While we do not deny that Congress may submit any matter of dispute to arbitration, we think it has not done so with the claims now under consideration.
We have been referred to authorities which hold that one head of a department shall not revise the allowances of his predecessor if the discretion and judgment of that predecessor have been exercised in the making of those allowances, and no mistake or patent error exists. This rule is affirmed in the case of The United States v. The Bank of the Metropolis, (15 Peters, 377;) but the court does not there declare that the finding of the officer is conclusive, and, if erroneous, beyond the reach of redress or revision, but says “the judicial tribunals of the country must be resorted to, to construe the law under which the allowance was made, and to settle the rights between the United States and the party to whom the credit was given.”
We are unwilling to believe that Congress intended by the resolutions under consideration to relinquish all control over the officer intrusted with the examination, or to give to his conclusion the effect of an award.
Chief Justice Marshall, ex parte Randolph, 2 Brockenbrough, 447, in discussing the act of 15th May, 1820, which made the findings of certain officers conclusive' against others, held that such findings were merely the acts of the agents of the government, and could not have the force and effect of judicial proceedings. Speaking of these officers, he says: “But these agents are purely ministerial, and their acts are necessarily to be treated only as ministerial acts.”
Much stress was laid in the argument of the counsel for the claimants upon the case of Kendall v. United States, (12 Peters, 524.) We have examined this case, and draw these distinctions as showing the difference between it and the one under consideration :
In that case, the credit which Mr. Kendall refused to give had been allowed by his predecessor, and had, moreover, been referred to an officer of a different department from that in which the controversy arose. The contest originated out of some claim for credit in the Post Office Department, and had been referred to an officer of a dif *6 ferent department, viz: the Solicitor of the Treasury. In the case before us, the matter was referred to the officers of the department whose appropriate duty it was to make the examination. In Kendall’s case, Congress and all other branches of the government acquiesced in the finding of the Solicitor of the Treasury. Mr. Kendall, of his own motion, became the contestant. In the case before us, Congress manifested its disapprobation of the re-statoment of the Secretary of War and his conduct, ia the most solemn manner, by rejjealing the resolution. The Secretary of the Treasury manifested his disapproval by refusing to pay the amount as found by the re-statement of Mr. Floyd. The disapproval of the government is further manifested by its resistance of the claim here by its solicitors. The Supreme Court, in discussing that case, declined to give an opinion as to the effect of a repeal by Congress of an authority like that conferred upon the Secretary of War in the petition now under consideration, remarking that “ it is unnecessary to say how far Congress might have interfered by legislation after the report of the Solicitor,” showing that in that case no rule was to be established, leaving the question open for future consideration ; and we are, at least, left in doubt as to what conclusion that court would reach in the case now before us. The point is here fairly presented, and is the controlling question in the issue now raised by this demurrer. The majority of this court hold that the repealing resolution of Congress revoked the power previously conferred upon the Secretary of War, and rendered all his acts and action in the premises null and void.
It appears from the petition that the entire sum allowed by the Secretary of War, and now sought to be recovered, is composed wholly of interest, the principal debt upon which it is computed having been satisfied long since. It is not necessary, under the conclusion to which we have arrived in reference to the repealing resolution, to decide at this time how far this court would have jurisdiction to allow a claim, the entire body of which is made up of interest, prohibited, as we are, from allowing interest as the incident of a debt.
There not being any cause of-action or claim set out in the petition, save what is founded upon the finding of the Secretary of War, under the resolution approved June 1, 1860, claimed to be an award, and holding, as a majority of this court does, that that resolution, and all action under it, was declared to be and became null and void by the force and effect of the resolution of repeal of March 2, 1S61, the demurrer is sustained, and the petition dismissed.
Mr. Henry Bennett for the claimant.
Mr. J. D. McPherson, Assistant Solicitor, for the government.
Loring, J., dissents.
Wilmot, J., not having heard the argument, does not take part in this decision.