Campbell, Chief Justice,
delivered the opinion of the court:
These cases, representing classes of congressional references in this court, have been heard together on motions of the defendants to dismiss them for want of jurisdiction. A statement of what is involved in the several references may afford some indication of the nature of the claims:
1. In Montgomery the petition alleges the taking in June, 1865, of a steamboat by the military forces of the United States and its use by the quartermaster’s department of the Army as a packet for some two years thereafter.
2. In Marsh the petition alleges the ownership of certain real estate, consisting of a dry dock, shipyard, and wharf at Charleston, S. C., the taking possession thereof by the Union Army and Navy in their occupation of Charleston prior to *601 September 12, 1865, and seeks payment for use and occupation of said property from September, 1865, to some period in 1866.
3. In Lacy the petition alleges the taking of certain stores and supplies in 1861 by the military forces and the use and occupation of a farm in Alexandria County, Va., including damages thereto by the military forces in 1862. There were findings made in this case and a motion made by the defendants for a new trial.
4. In Hibernia Bank & Trust Co. the petition alleges the taking of certain Confederate money from the Union Bank, who was the predecessor in title of the claimant, which is alleged to have been .taken under the influence of an order by the Assistant Adjutant General of the Federal Army at New Orleans in September, 1863, and that said funds belonged to certain banks in Tennessee, which thereafter brought suit against said Union Bank and recovered to the extent of $24,713.79.
5. In Parsons the petition sets up a claim for occupation of real estate and injury thereto and the taking of certain other property by the Union forces during the letter part of the year 1865. Findings of fact were made and a motion for a new trial by the defendants filed.
These references were under the Tucker Act.
6. In Sears the petition involves stores and supplies and the reference comes to this court under the judical code.
Separate motions going to each of these matters were made by the defendants, taking the ground that this court should dismiss them for want of jurisdiction, and, therefore, should not ascertain the facts and report to the House of Congress from which they severally came by reference.
We think it best to an understanding of the conclusions we reach to review the principal acts of Congress relating to the jurisdiction of this court.
As originally constituted by the act of February 24, 1855, 10 Stat. L., 612, the Court of Claims was authorized to “hear and determine all claims founded upon any law of Congress or upon any regulation of an executive department or upon any contract, express or implied, with the Government of the United States which may be suggested to it by a *602 petition filed therein, and also all claims which may be referred to said court by either House of Congress,” and was required to “keep a record of their proceedings” and systematically to report to Congress “the cases upon which they shall have finally acted, stating in each the material facts which they find established by the evidence, with their opinion in the case and the reasons upon which such opinion is founded.” Their conclusions were in every case subject to such action as the Congress chose to take.
By an act approved March 3, 1863, 12 Stat. L., 765, amending said act of February 24, 1855, provision was made for sending to this court all petitions and bills praying or providing for the satisfaction of private claims, and “in addition to the jurisdiction now conferred by law” the court was given jurisdiction of set-offs, counterclaims, etc. Provision was also made for an appeal by either party to the Supreme Court “from any final judgment or decree which may hereafter be rendered in any case by said court ” where the amount in controversy exceeded $3,000, and in some cases an appeal was allowed by the Government without regard to the amount involved. By section 7 of that act is was provided that in all cases of final judgment by the court, or by the Supreme Court upon appeal, the sum due thereby should be paid out of any general appropriation made by law for the payment of private claims on presentation of a certified copy of the judgment to the Secretary of the Treasury.
An important provision occurring in section 12 of said act of March 3, 1863, is as follows:
“ Provided, however, That in order to authorize the said court to render a judgment in favor of any claimant, if a citizen of the United States, it shall be set forth in the petition that the claimant, and the original and every prior owner thereof where the claim has been assigned, has at all times borne true allegiance to the Government of the United States, and, whether a citizen or not, that he has not in any way voluntarily aided, abetted, or given encouragement to rebellion against the said Government, which allegations may be traversed by the Government, and if on the trial such issue shall be decided against the claimant his petition shall be dismissed.”
*603 Said act by section 14 thereof provided:
“ That no money shall be paid out of the Treasury for any claim passed upon by the Court of Claims till after an appropriation therefor shall be estimated for by the Secretary of the Treasury.”
The case of Gordon, 1 C. Cls., 1, was heard by the court, and an appeal was taken by virtue of said act of March 3, 1863, allowing appeals from final judgments of this court. The appeal was dismissed by the Supreme Court, Gordon’s case, 2 Wall., 561, and in an opinion prepared by Taney, Ch. J., which has an added interest because it was his last judicial utterance, and was adopted by the court after his death, 117 U. S., 696, the question of jurisdiction is discussed.
Construing sections 7 and 12 of said act together, it was held that the effect of the latter was to subject any judgment the Supreme Court might render in the case to the supervision, first, of the Secretary, and, then, of Congress, which was not allowable, since the Supreme Court “ represents one of the three great divisions of power in the Government of the United States,” whose judgments can not be reviewed by either of the other branches of the Government; and therefore, as the act deprived its judgment of the finality essential to the maintenance of its right to execute its own judgment, that court did not by said appeal acquire any jurisdiction. The opinion says:
“ So far as the Court of Claims is concerned we see no objection to the provisions of this law. Congress may undoubtedly establish tribunals with special powers to examine testimony and decide, in the first instance, upon the validity and justice of any claim for money against the United States, subject to the supervision and control of Congress, or a head of any of the executive departments. In this respect the authority of the Court of Claims is like to that of an auditor or comptroller, with this difference only— that in the latter case the appropriation is made in advance, upon estimates, furnished by the different executive departments, of their probable expenses during the ensuing year, and the validity of the claim is decided by the officer appointed by law for that purpose, and the money paid out of the appropriation afterwards made. In the case before us the validity of the claim is to be first decided and the ap *604 propriation made afterwards. But in principle there is no difference between these two special jurisdictions created by acts of Congress for special purposes, and neither of them possesses judicial power in the sense in which those words are used in the Constitution. The circumstance that one is called a court and its decisions called judgments can not alter its character or enlarge its power.”
Following the decision in the Gordon case, an act approved March 17, 1866, repealed the fourteenth section of the act of March 3, 1863, and allowed appeals to the Supreme Court from “ the final judgment or decree ” of the Court of Claims in all cases theretofore decided. And by an act entitled “An act to provide for appeals from the Court of Claims and for other purposes,” approved June 25, 1868, 15 Stat. L., 75, appeals were allowed to the Supreme Court “ on behalf of the United States from all the final judgments of the said Court of Claims adverse to the United States, whether such judgments shall have been rendered by virtue of the general or any special power or jurisdiction of said court under the limitations now provided by law for other cases of appeal from said court.”
Appeals from final judgments of this court were entertained by the Supreme Court after the repeal of the fourteenth section of the act of 1863 and have ever since been allowed.
Other acts set out more at length in the footnote[1] are the captured or abandoned property act, approved March 12, *605 1863, 12 Stat L., 820; act of July 4, 1864, 13 Stat. L., 381, restricting the court’s jurisdiction; act of May 9, 1866, 14 Stat. L./44, extending its jurisdiction; act of February 9, *606 1867,14 Stat. L., 497, construing that of July 4, 1864; act of July 25,1868,15 Stat. L., 75; act of July 27,1868,15 Stat. L., 243, declaring the purpose of the captured or abandoned property act; the Bowman Act, 22 Stat. L., 485, and the Tucker Act, 24 Stat. L., 505, the fourteenth section of which is as follows:
“ Sec. 14. That whenever any bill, except for a pension, shall be pending in either House of Congress providing for the payment of a claim against the United States, legal or equitable, or for a grant, gift, or bounty to any person, the House in which such bill is pending may refer the same to the Court of Claims, who shall proceed with the same in accordance with the provisions of the act approved March third, eighteen hundred and eighty-three, entitled ‘An act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the Government,’ and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there *607 has been delay or laches in presenting such claim, or applying for such grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed, or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy.”
By section 16 it is provided “ That all laws and parts of laws inconsistent with this act are hereby repealed.”
No other statutes material to this inquiry were passed affecting the jurisdiction of this court until the Judicial Code was enacted, except the act of June 25, 1910, 30 Stat. L., 837, which amended and reenacted section 14 of the act of March 3, 1887, by the addition thereto of the following words, “ together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.”
*608 By the repealing clause of the Judicial Code, 36 Stat. L., 1135, the Bowman Act is declared to be repealed, but certain parts of it are enacted in the Judicial Code. For instance, sections 184 and 185 of the Judicial Code are sections 4 and 5 of the Bowman Act. Section 151 of the Judicial Code is taken from the fourteenth section of the Tucker Act, and the proviso therein is taken from the thirteenth section of the Tucker Act. There is, however, to be noted the fact that the words appearing in section 14 of the Tucker Act, referring to the Court of Claims, as follows: “ Who shall proceed with the same in accordance with the provisions of the act approved March 3, 1883, entitled ‘An act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the Government,’” are omitted from section 151 of the Judicial Code and in lieu thereof the words “ which shall proceed with the same in accordance with such rules as it may adopt ” are inserted. In section 151 is also inserted the provision that bills may be referred “ for the investigation and determination of facts.”
This review of the statutes makes it apparent that this court exercises a duality of jurisdictions, one in cases where the statute authorizes the court to proceed to final judgment, from which appeals lie direct to the Supreme Court, and the other in those classes of reference, congressional and departmental, in which its action does not result in final judgment, and from its action therein no appeal lies. This may find illustration in the fact that the district courts are given by the Tucker Act concurrent jurisdiction to a limited extent with the Court of Claims in those cases in which the court is authorized to render judgment, but they are not authorized to deal with congressional references.
In its origin the court was limited to investigating and reporting to Congress, and its right to hear, determine, and render final judgment was of gradual growth, which, however, did not interfere with its original jurisdiction to investigate facts and report thereon. When the statute was passed relieving its final judgments of the supervision of the Secretary of the Treasury and of Congress, referred to in *609 the Gordon case, and giving the right of appeal therefrom, it became vested necessarily with judicial power, because the cases of which it has cognizance are suits to which the United States must be a party, and its judgments, subject to appeal, are final judgments.
In the Sanborn case, 148 U. S., 222, the court considered the question of appeal from the findings of fact and law reported by this court to the Department of the Interior upon a matter transmitted thereby under a provision of the Tucker Act. Following the Gordon case, the Supreme Court denied any right of appeal in such departmental references, and, speaking of the effect to be given the rulings of this court upon references of the kind involved in that case, said:
“ Such a finding is not made obligatory on the department to which it is reported — certainly not so in terms — and not so, as we think, by any necessary implication. We regard the function of the Court of Claims in such a case as ancillary and advisory only. The finding or conclusion reached by that court is not enforceable by any process of execution issuing from the court, nor is it made by the statute the final and indisputable basis of action either by the department or by Congress. * * * In the case before us there was, as held by the Court of Claims, no final judgment obligatory upon the Department of the Interior or enforceable by execution from any court. Moreover, there was really, no suit to which the United States were parties.”
It was. further said that the provisions of the ninth section of the Tucker Act have reference to cases under the prior sections of that act which “treat of cases or suits brought against the United States whether in the district courts, circuit courts, or the Court of Claims and wherein final judgments or decrees shall be entered.”
The finality of judgments of the Court of Claims in cases where it is authorized to render judgment since the act of March 8, 1863, and the subsequent enactment repealing the fourteenth section of that act is decided in O'Grady's case, 22 Wall., 641. A suit had been brought by the claimants, O’Grady’s executors, under the abandoned or captured property act resulting in a judgment in their favor for the net *610 proceeds of the cotton, which belonged to their testator, covered into the Treasury. On presentation of a duly certified copy of the judgment at the Treasury Department, the Secretary reserved and detained the amount claimed as internal-revenue tax on said cotton and paid the balance of said judgment to claimants, who thereupon instituted another suit in this court to recover the amount so detained as taxes on the cotton, and secured another judgment for said sum. The United States appealed from this last judgment, but had not in the first suit pleaded or set up any counterclaim for the amount of the internal-revenue tax, nor had they applied for a new trial. The judgment of the Court of Claims in the latter suit was affirmed upon the principle of the finality of its judgment in the former suit, the Supreme Court saying: “ Should it be suggested that the judgment in question was rendered in the Court of Claims, the answer to the suggestion is that the judgment of the Court of Claims, from which no appeal is taken, is just as conclusive under existing laws as the judgment of the Supreme Court until it is set aside on a motion for a new trial.”
A further examination of the decided cases will tend to emphasize the two jurisdictions of which we have spoken.
In all those cases where the Court of Claims may render judgments appeals lie to the Supreme Court. “An appellate jurisdiction necessarily implies some judicial determination — some judgment, decree, or order of an inferior tribunal from which an appeal has been taken.” B. & O. R. R. Co. v. Interstate Commerce Commission, 215 U. S., 225. But appellate jurisdiction in the Supreme Court extends to cases in law and equity arising under the Constitution, the laws of the United States, and treaties; “ the power conferred on that court is exclusively judicial, and it can not be required or authorized to exercise any other.” Gordons case, 117 U. S., 697; Muskrat case, 219 U. S., 346. The “judicial power,” conferred by the Constitution on the Supreme Court and with the aid of appropriate legislation by Congress upon the inferior courts of the United States, is “ the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case *611 before it for decision.” Muskrat case, supra. Its application can be invoked only in “ cases ” or “ controversies ” referred to in the Constitution, by which are intended “the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim of a party under the Constitution, laws, or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case of controversy.” Smith v. Adams, 130 U. S., 174. “The term implies the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication.” Muskrat case, supra; Marbury v. Madison, 1, Cranch, 137; Osborn v. Bank, 9 Wheat., 819. In Interstate Commerce Commission v. Brimson, 154 U. S., 447, it was held that the proceeding there under review was a case or controversy, because, as was said, “ The proceeding is one for determining rights arising out of specified matters in dispute that concern both the general public and the individual defendant. It is one in which a judgment may be rendered that will be conclusive upon the parties until reversed by this court. * * * It is none the less the judgment of a judicial tribunal dealing with questions judicial in their nature and presented in the customary forms of judicial proceedings because its effect may be to aid an administrative or executive body in the performance of duties legally imposed upon it by Congress in execution of a power granted by the Constitution.”
The latter part of this quotation is urged by counsel for defendants here as showing that this court in acting upon congressional references “renders a judgment of a judicial tribunal,” but the contention overlooks the distinction made in the Brimson case that the proceeding there was “not as in Gordon’s case,” one where an opinion only was sought, that “ would remain a dead letter and without any operation upon the rights of the parties.” In other words, there was contemplated in the proceeding reviewed in the Brimson case a judgment. And certainly of such a nature is the *612 action of this court in cases where it is expressly authorized to render final judgments from which appeals lie. They are cases or controversies to which the judicial power extends.
The distinction is illustrated by the Ferreira case, 18 How., 40, which has many times been approved by the Supreme Court. That case involved certain claims arising from injuries suffered by Spanish inhabitants on account of the operations of the American Army in Florida, it having been provided in the treaty of 1819 that the United States should cause satisfaction to be made for the injuries which, by process of law, should be established to have been suffered by the Spanish officers and individual Spanish inhabitants by the operations of the American Army in Florida. An act of Congress was passed to carry into execution this article of the treaty. A later act was passed in 1834 extending the provisions of the former act to injuries suffered in 1812 and 1813 and limiting the time for presenting the claims to one year from the passage of the act. The original act authorized the judges of the superior courts established at St. Augustine and Pensacola to receive and adjust all claims arising within their respective jurisdictions agreeably to the provisions of the article mentioned. The second section provided that “ where the judges shall decide in favor of the claimants the decisions, with the evidence on which they were founded, shall be by the said judges reported to the Secretary of the Treasury, who, on being satisfied that the same is just and equitable within the provisions of the treaty, shall pay the amount thereof to the person or persons in whose favor the same is adjudged.”
He did not, however, present his claim within the time limited; and in 1849 a special law was passed authorizing the district judge of the United States for the Northern District of Florida to receive and adjudicate this claim and that of certain other persons mentioned in the law under the act of 1834 — the several claims to be settled by the Treasury as in other cases under the said act. Florida had become a State of the Union in 1849, and therefore the district judge was substituted in the place of the Territorial officer. Ferreira presented his claim to the district judge, who took the testi *613 mony offered to support it, and decided that the amount stated in the proceeding was due. An appeal was prayed by the district attorney and the matter went to the Supreme Court. The Supreme Court stated that the only question was whether they had jurisdiction of the case, and that, in order to determine that question, they should examine the nature of the proceeding before the district judge and the character of his decision from which the appeal had been taken. It was said that as the treaty created no tribunal by which the damages were to be adjusted and gave no authority to any court of justice to inquire into or adjust the amount which the Government was to pay, it rested with Congress to provide a forum. “ But when that tribunal was appointed it derived its whole authority from the law creating it, and not from the treaty; Congress had the right to regulate its proceedings and limit its power and to subject its decisions to the control of an appellate tribunal if it deemed it advisable to do so. * * * The tribunal created to adjust the claims can not change the mode of proceeding or the character in which the law authorizes it to act, under any opinion it may entertain that a different mode of proceeding or a tribunal of a different character would better comport with the provisions of the treaty. If it acts at all it acts under the authority of the law and must obey the law. The Territorial judges, therefore, in adjusting these, claims derived their authority altogether from the laws above mentioned, and their decisions can be entitled to no higher respect or authority than these laws gave them. * * * And it is manifest that this power to decide upon the validity of these claims is not conferred on them as a judicial function to be exercised in the ordinary forms of a court of justice. For there is to be no suit; no parties in the legal acceptance of the term are to be made — no process to issue; and no one is authorized to appear on behalf of the United States or to summon witnesses in the case. The proceeding is altogether ex forte; and all that the judge is required to do is to receive the claim when the party presents it and to adjust it upon such evidence as he may have before him or be able himself to obtain. * * * But he is required to *614 transmit both the decision and the evidence upon which he decided to the Secretary of the Treasury, and the claim is to be paid if the Secretary thinks it just and equitable, but not otherwise. It is to be a debt from the United States upon the decision of the Secretary, but not upon that of the judge.” * * * “It is too evident for argument on the subject that such a tribunal is not a judicial one, and that the act of Congress did not intend to make it one. * * * The decision is not the judgment of a court of justice. It is the award of a commissioner. * * * The powers conferred by these acts of Congress upon the judge as well as the Secretary are, it is true, judicial in their nature, for judgment and discretion must be exercised by both of them. * * * A power of this discription may constitutionally be conferred on a secretary as well as on a commissioner. But it is not judicial in either case in the sense in which judicial power is granted by the Constitution to the courts of the United States.”
When, therefore, motions are made to dismiss. congressional references for want of jurisdiction it becomes necessary to decide whether the grounds assigned for the motion are applicable to that feature of the court’s jurisdiction or refer to its jurisdiction to hear and determine cases against the United States, for the-two jurisdictions are not interdependent. Their fields of operation are distinct, and it hence follows that some of the reasons urged by the Government upon this hearing as showing a want of jurisdiction of the court in these matters of congressional references are referable to that other jurisdiction of the court wherein it may render judgment, but it does not follow that they may not be .urged appropriately when the court is called upon to ascertain the nature or character of a demand or “the amount, if any, legally or equitably due from the United States ” to the claimant.
As appears from the Tucker Act and from section 145 of the Judicial Code the grant by Congréss to this court of jurisdiction in cases against the United States is of an extensive character. Actions or suits brought by virtue of these statutes are “ cases ” within the constitutional meaning *615 of the term and in their adjudication the court exercises judicial power. La Abra Silver Mining Co. v. United States, 175 U. S., 423-456, 32 C. Cls., 462; Smith v. Adams, 230 U. S., 167. See also Muskrat v. United States, 219 U. S., 346.
The United States can not be sued except by their consent and therefore Congress has established this court and given it jurisdiction of such cases as arise and are provided for in the statutes, and its final judgments are only revisable by the Supreme Court: “ If, therefore, the Court of Claims has the right to entertain jurisdiction of cases in which the United States are defendant and to render judgment against that defendant it is only by virtue of acts of Congress granting such jurisdiction and it is limited precisely to such cases both in regard to parties and to the cause of action as Congress has prescribed.” Ue Groot case, 5 Wall., 419; 1 C. Cls. 97; Price's case, 174 U. S., 373.
But the court’s jurisdiction in dealing with congressional references is of a different order. Its right and authority to proceed in these references is, of course, governed by the statute which is at one and the same time a grant of authority and a limitation upon its exercise. Here, as in other cases, the court is bound to take notice of any limitations upon its authority. Reid's case, 211 U. S., 529, 539.
These references are not the “ cases ” or “ controversies ” reached by the judicial power within the meaning of those terms in the Constitution. No final judgments can be rendered in them by this court, but its action therein is at all times subject to the will and control of Congress.
The questions before us turn upon the construction to be given the fourteenth section of the Tucker Act and section 151 in connection with other sections of the Judicial Code.
The former has been frequently construed by this court, the first case dealing with its meaning being that of Dowdy, Executrix, 26 C. Cls., 220. The court held that the reference authorized by the Tucker Act is “ a bill ” pending in either House of Congress, and not, as in the Bowman Act, the reference of “ a claim or matter ”; that the Tucker Act was not an amendment of the Bowman Act; that the direction *616 to the court in the fourteenth section to “ proceed with the same in accordance with the provisions of the Bowman Act ” was to obtain rules of procedure and was not a limitation upon the court’s jurisdiction, and the facts of that case showing a claim for stores and supplies taken from a loyal person in the State of Tennessee by the Federal forces, the court overruled the defendants’ motion to dismiss for want of jurisdiction.
In the Farrar case, 26 C. Cls., 152, a claim had been transmitted to the court under the Bowman Act and dismissed, and a bill was subsequently referred under the Tucker Act involving the same claim. A motion to dismiss for want of jurisdiction was overruled by the court, which, speaking through Bichardson, Ch. «T., said:
“ Whatever other effect the fourteenth section of the act of March 3, 1887, may have, it is clear that it allows either House of Congress to refer any claim to this court to report the facts bearing upon the question whether there has been delay or laches in presenting such claim and any facts bearing upon the question whether the bar of any statute of limitation should be removed, with other facts in such case.”
These opinions were rendered in 1891, and afterwards, in 1906, the Chieves case, 42 C. Cls., 21, came before the court. This was a Tucker Act reference in which the facts found were that claimants were the owners of a large quantity of tobacco seized in March, 1865, by the Federal authorities, sold, and the proceeds of sale covered into the Treasury. The proof did not establish the loyalty of claimants. The case was dismissed for want of proof of loyalty but a new trial was granted, the facts were found and reported to the Senate, by which the bill had been referred. The opinion follows the Dowdy case.
This court, speaking through Howry, J., delivered an opinion in Hunt’s case, 45 C. Cls., 566, decided November 21, 1910, which involved a claim for “ stores and supplies.” It was first transmitted under the Bowman Act, the claimant’s decedent was found disloyal, and the petition was dismissed. It was afterwards referred under the Tucker Act; the said decedent was found loyal and the facts were reported to *617 Congress. The court speaking of the fourteenth section of the Tucker Act says: It “ provides for the investigation of claims on the Government for which there is no remedy, and the court is directed to report the facts to Congress.”
After the date of the opinions in 1891, as well as since 1906, the court continued to make findings and reports in references of bills under the fourteenth section of the Tucker Act and to dismiss claims transmitted under the Bowman Act where loyalty was not proven. But in May, 1911, the Brandon case, 46 C. Cls., 359, was decided in an opinion by Chief Justice Peelle with a dissenting opinion by Judge Howry. The reference of the bill in that case was under the fourteenth section of the Tucker Act, the claim involving the seizure of cotton of a disloyal person under the abandoned or captured property act, which was sold, the net proceeds of the sale being in the Treasury. The court sustained a motion to dismiss the case for want of jurisdiction, holding that in respect to claims for cotton seized and sold under the provisions of the abandoned or captured property act, “ the court must construe section 14 of the act of 1887 in the light of previous legislation and the decisions of the Supreme Court and of this court in relation thereto * * * as well
as in harmony with the legislation and policy of Congress giving to the loyal owners of cotton where the same was sold and the proceeds were covered into the Treasury an exclusive remedy under the act of 1863,” and it was further said, “ The Bowman and Tucker Acts were intended to form one system having a common purpose, i. e., to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the Government ; not to disregard previous legislation or adjudications in relation to such claims; and in the absence of language to the contrary there is no reason why the rules of law should not apply here as in other cases.”
We have thus referred to the leading cases in this court involving its construction of the fourteenth section of the Tucker Act, and it appears that in the Brandon case a distinction was made between the reference there considered and references generally under the Tucker Act, the distinc *618 tion being based largely upon the consideration that the Congress, by section 162 of the Judicial Code, had bestowed jurisdiction on this court to hear and determine claims for cotton seized and sold under the provisions of the abandoned or captured property act after June 1, 1865, where the proceeds of its sale were covered into the Treasury and had thus evinced a purpose to withhold jurisdiction from this court to consider claims for cotton seized and sold under the said act prior to said date. It is unnecessary for us to discuss that question, because none of the cases here considered involve cotton seized or sold under said act.
These references are generally spoken of as “ Congressional cases ” in this court, but they are not “ cases ” calling for adjudication in the sense of rendering final judgment, the function of the court being limited to the investigation and determination of the facts, with such conclusions as are contemplated by the statute. It is true that these references take the form of adversary proceedings, because a petition is required to be filed by the claimant and defenses are interposed by the Government through its Assistant Attorney General. Evidence is taken, and its admissibility and materiality determined by the rules of the common law. The witnesses are examined and cross-examined by deposition taken or oral examination had, but not before the court. This evidence, after oral argument, is submitted with the pleadings and brief of both parties to the court, who thereupon make up their findings of fact. The function of the court, therefore, is essentially of a judicial nature, but it can render no final judgment. Its right to proceed, its duty to act, its authority or jurisdiction, and the limits of either are to be found in the statute.
As above stated, this court held, more than 20 years ago, that in a reference under the Tucker Act it should proceed to investigate and determine the facts and report them to Congress, regardless of the status of the claimant as to loyalty or disloyalty and regardless of the provisions of the Bowman Act.
The fourteenth section of the Tucker Act, therefore, grants to the court jurisdiction in these references, for Congress *619 has not only the right to refer bills to this court, but also has the right to define the classes of claims which the court shall consider and the course of procedure and extent of action which the court shall take in any claim or class of claims that may be referred.
And this brings us to a consideration of the argument for claimants relative to the conclusion which the statute contemplates the court may make in characterizing the nature of the claim or demand.
By the fourteenth section of the Tucker Act and likewise by section 151 of the Judicial Code the court is required to report to the House from which the reference came the facts in the case and the amount, where same can be liquidated, including any facts bearing upon the question whether there has been delay or laches in presenting such claim, or applying for such grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy, together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity against the United States, and the amount, if any, legally or equitably due from the United States to the claimant; and we regard the latter clause as an important one.
The meaning of the phrase “ a claim legal or equitable ” is plain when found in a statute dealing with the jurisdiction of a court, and especially where reference is had to a Federal court given jurisdiction by the same statute of “ all claims ” of specified character in respect of which the party would be entitled to redress against the United States in a court of law or equity of the United States were suable (sec. 145, Judicial Code), because Federal courts exercising judicial power under the Constitution proceed with controversies or cases at law or in equity under the well-established meaning of the terms and their jurisdiction can not be extended to include cases or controversies not arising at law or in equity.
*620 It is, however, earnestly argued by attorneys for the claimants that the words “legal or equitable” as used in the statute should not be construed in their judicial sense, but that they should be given what is termed a more comprehensive meaning, and that a claim should be reported as equitable if it falls within such comprehensive meaning. As illustrative of what this “ more comprehensive ” meaning of “equitable claim” may include, and therefore to be so reported, we are referred to the case of United States v. Realty Co., 163 U. S., 427. The question involved was the right of the disbursing officers of the Treasury to refuse to pay warrants issued for sugar bounties to Louisiana planters or manufacturers upon the ground that the act authorizing the bounties was unconstitutional. The court preter-mitted decision of the question of the constitutionality of the enactment and turned its attention to the question, developed by the facts of the case, “whether equitable considerations can attach to a Claim which among other grounds is based upon an act that was supposed by all the officers of the Government to be valid.”
Congress had appropriated for these bounties and their payment was being resisted. The court was therefore called upon to decide upon the right of Congress to have made the appropriation and held that as Congress has the power to lay and collect taxes, etc., “ to pay the debts ” of the United States, Art. I, sec. 8, the appropriation was constitutional because, as was said: “ The term ‘ debts ’ includes those debts or claims which rest upon a merely equitable or honorary obligation and which would not be recoverable in a court of law if existing against an individual. The Nation, speaking broadly owes 4 a debt ’ to an individual when his claim grows out of general principles of right and justice; when in other words it is based upon considerations of a moral or merely honorary nature, such as are binding on the conscience or the honor or an individual although the debt could obtain no recognition in a court of law.”
These utterances were not made as a foundation for congressional action but in vindication of what Congress had already done, and the view we take in no wise contravenes *621 the principles announced by the Supreme Court. On the contrary, we think that in confining the application of “claims legal or equitable” as used in the Tucker Act to their legitimate and ordinarily accepted signification in courts, we are following the course suggested, at least, by the Supreme Court, following directly after the above quotation :
“Their recognition (the ‘debts’ referred to) depends solely upon Congress, and whether it will recognize claims thus founded must be left to the discretion of that body.”
The conclusion which the statute contemplates the court will include in its report is not necessarily a legal conclusion or opinion, but such a conclusion, whether of law or fact, as will acquaint Congress with the nature and character of claimant’s “ demand ” either as a claim legal or equitable or as a gratuity and the amount legally or equitably due where the facts show it is a legal or equitable claim. We may assume that if Congress had intended to invite conclusions of this court upon the questions whose “ recognition depends solely on Congress,” or had intended to ask the advice of the court as to whether the claims “ are based upon considerations of a moral or merely honorary nature,” which if thus founded “ must be left to the discretion of that body,” the Congress would have made its intention in either case distinct. And as Congress has not directed such an expression, it is wiser probably for this court not to offer unsought advice.
These views with reference to the conclusions this court may make are sustained by the authorities defining the functions of this court to which we have referred as well as by the decisions upon what constitute legal or equitable claims.
In De Groofs case, 1 C. Cls., 97, the court had under consideration a joint resolution of Congress providing for the settlement of a claim “ on principles of justice and equity.” It was there said by Casey, Ch. J., that the direction to settle on principles of equity and justice thus referred to is not “that vague, undefined, and undefinable sense of fairness and right which would be as different in different cases as the varying passions and prejudices of men. But we understand and suppose it to mean those well-known principles *622 which form the common and general standard of right and justice as administered in our courts of judicature and which control and regulate the affairs of life between man and man. For law and justice are correlative and convertible terms, and equity means nothing more than that modification of the strict technical rules of law in their application to a given subject which guides a chancellor in the administration of equity not by disregarding or overruling the law, but in so applying it as to prevent its being the means of fraud or injustice.”
In that case, as here, the insistence was that by the terms of the reference the court should proceed outside of the rules of equity as known to and administered by courts and do “justice” according to some supposedly wider and larger range of powers. The court appositely said:
“ Whatever other power may be denied to Congress, their right to prescribe and regulate the remedy for the enforcement of claims against the United States will scarcely be disputed nor their authority to direct and control the jurisdiction of this or any other statutory court over any particular case, as well as a class of cases, he seriously controverted.” (Italics ours.)
This case was affirmed on appeal, 5 Wall., 419. See also Western Cherokee Indians v. United States, 27 C. Cls., 1; Old Settlers' case, 148 U. S., 427, 465; Ingram’s case, 32 C. Cls., 147, 169.
In Stovall’s case, 26 C. Cls., 226-233, in an opinion by Judge Nott, the court refers to the Tucker Act in these words:
“ It follows that the claimant must stand or fall with his legal rights; that the relief of the one party must be restricted to the obligations of the other; that the damages can not be discretionary, as in Congress, and that there can be no relief to the claimant until he has established, like other plaintiffs in other cases, a legal liability on the part of the defendants.”
The references are made “ for the investigation and determination of the facts ” (to use the language of the Judicial Code, sec. 151), and for certain conclusions, and the language of the court in what appears to be an unanimous opinion *623 delivered by Judge Nott in Vance’s case, 30 C. Cls., 252, 266, though dealing with a Bowman Act reference, seems appropriate here:
“It therefore behooves the court, when preparing these findings for Congress, to so frame them that they shall give rise to no misunderstanding of the legal or equitable conditions of the case. It is also the duty of the court to so frame them that they shall not necessitate in Congress a needless investigation and discussion of irrelevant questions of law. The purpose of the Bowman Act is expressed in its title, ‘An act to afford assistance and relief to Congress and executive departments in the investigation of claims and demands against the Government.’ It is not the purpose of the act that the court shall assist claimants to present only their side of a case to Congress, and assuredly not to present it through the distorting medium of an erroneous legal theory having the apparent sanction of a judicial tribunal, when in fact no such sanction is intended. The end and object of these findings in congressional cases is to present the material facts and circumstances properly connected with a el aim in such a form that the petitioner’s case will be ready, without further investigation, for the exercise of the legislative discretion.
“ To the end of presenting a case to Congress so that it shall then be ready for the exercise of the legislative discretion, the court should carefully refrain from finding facts which imply that a legal right was impaired when, in the opinion of the court, no such legal right existed.”
This case is cited in West Virginia v. United States, 37 C. Cls., 205, in the court’s opinion, by Judge Howry, to the proposition that “ Information for Congress must be ascertained in strict conformity to the rules of judicial procedure from competent and admissible evidence taken by authority of law,” and to the same proposition it is cited in Le More’s case by Judge Peelle, which involved a Tucker Act reference. These terms have a well-defined meaning, and it may often be important, in order to show the status and nature of a claim, that the court state a conclusion explanatory of that status or nature, for many of the claims coming before the court are very old and are of the description called “war claims.” Some may have been legal claims since barred by the statute of limitations, and that statute operates generally *624 on the remedy as to debts. Campbell v. Holt, 115 U. S., 620. Some claims may never have had any legal status, because of disloyalty of the claimant or for other causes. Congress is entitled to know the nature and character of the “demands,” and when it extends the statutory jurisdiction or authorizes the court to give opinions upon the merits of claims which are not legal, equitable, or justiciable in any court it will be time to enter that field of inquiry.
“ There are many cases against natural justice which are left wholly to the conscience of the party and are without any redress,-equitable or legal. And so far from a court of equity supplying universally the defects of positive legislation, or peculiarly carrying into effect the intent as contra-distinguished from the text of the legislature, it is governed by the same rules of interpretation as a court of law; and is often compelled to stop where the letter of the law stops. It is the duty of every court of justice, whether of law or .of equity, to consult the intention of the legislature, and, in the discharge of this duty, a court of equity is not invested with a larger or a more liberal discretion than a court of law.” Story's Eq. Jur., 12.
Combating the idea that a court may determine equitable rights on any other basis than the settled principles of equity jurisprudence, Judge Story says (ibid., p. 15): “If, indeed, a court of equity in England did possess the unbounded jurisdiction which has been thus generally ascribed to it of correcting, controlling, moderating, and even superseding the law, and of enforcing all the rights, as well as the charities, arising from natural law and justice, and of freeing itself from all regard to former rules and precedents, it would be the most gigantic in its sway and the most-formidable instrument of arbitrary power that could well be devised.”
Where by the Tucker Act, and likewise by the Judicial Code, there is conferred upon the Court of Claims two kinds of jurisdiction, of which we have spoken — the one jurisdiction to hear and determine and to render final judgments in cases or controverisies at law or in equity involving the exercise of judicial power in its constitutional sense, and the other jurisdiction limited by statute to investigate and determine *625 facts upon congressional references and report them with its conclusions to the Hduse referring the bill, it seems that the language of the statute in its different parts descriptive of the quality of the claims should be given similar construction in both kinds of jurisdiction, unless it plainly appears that Congress intended a different construction should be adopted by the court.
Recognizing the force of the ruling that Congress may not “bring under the judicial power a matter which from its nature is not a subject of judicial determination,” Murray v. Hoboken, 18 How., 272-284; La Abra Silv. Min. Co. v. United States, 175 U. S., 423-456; Muskrat case, supra; Osborne v. Bank, 9 Wheat., 819; Smith v. Adams, 130 U. S., 167, and recognizing also that “ there are matters involving public rights which may be presented in such form that the judicial power is capable of acting on them and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States as it may deem proper,” as was said by the Supreme Court in Murray v. Hoboken, 18 How., 272, and quoted in La Abra Silv. Min. Co. case, 175 U. S., 456, we may well hesitate to adopt the view urged upon us that Congress in using the term “ equitable ” or “ equitably ” in the fourteenth section of the Tucker Act or section 151 of the Judicial Code intended to invoke a conclusion of this court upon the merits or demerits of a claim in that sphere which belongs to congressional judgment, where Congress alone can act, and which does not furnish cases or controversies of which the courts have cognizance.
We think the determination of such a question “must in its nature be one for Congress to decide for itself,” Realty Co. case, 163 U S., 444, and that Congress has not bestowed power for a larger judicial expression in matters of reference than is bestowed in cases of controversies coming within the court’s jurisdiction. Where we say a claim is legal or equitable, in the legal sense of the term, we may feel assured that the court and the Congress will understand the terms alike, but where we say the claim is equitable in the broader sense mentioned, without so defining it, we may understand the *626 conclusion in one sense and Congress may understand it in another. It is for Congress, and not for us, to say whether the jurisdiction to express an opinion beyond the power now given shall be conferred.
While we do not look to debates in Congress upon a given measure to ascertain the meaning of an act as actually passed, Aldridge v. Williams, 3 How., 24; Freight Assn. case, 166 U. S., 290, 318, it may be said here (because the matter of congressional references affects only the Congress and this court) that the question we have discussed was debated to an extent when the amendment of June 25, 1910, to the Tucker Act was upon its passage in the House; and when the amendment as proposed by the committee having it in charge was further amended in the House by the addition of the words “ and the amount, if any, legally or equitably due from the United States,” 61st Cong., 2d sess., vol. 45, pp. 3525-3527, it was argued pro and con that the effect of said words if inserted in the proposed amendment might give the conclusions of this court somewhat the effect of a judgment, and it was insisted that the sole purpose of the amendment as originally proposed was to secure to Congress such aid as the conclusions called for would furnish, but was not intended to hamper the Congress in the least with regard to its decision in dealing with claims, either as to their merit or their payment — that as to its action Congress should be entirely free. It was, therefore, because Congress desired to know the legal status of a claim that they called upon the court to determine in its conclusion whether any amount was legally or equitably due from the United States.
The Congress purposely left itself free to deal with all or any questions affecting claims according to its judgment, and it seems to have plainly meant that a conclusion of this court as to “the amount, if any, legally or equitably due from the United States” should be based upon legal or equitable principles as recognized by or enforced in the courts; and it also seems plainly to have meant by* the amendment that it neither authorized nor invited conclusions based upon those more or less undefined considerations of justice, merit, moral obligation, or policy, the determination *627 of which belongs to the political department of the Government.
And these views would seem to be reinforced by a consideration of the provisions of the Judicial Code applicable to congressional references. Acquainted as they were with the construction which this court had given the Bowman Act and the Tucker Act the Congress by the Judicial Code (sec. 297) repealed the Bowman Act in terms and a large part of the Tucker Act, including in the repeal section 14 of the latter, and yet carried into the Judicial Code parts of both of said acts, which parts must be construed together and as parts of one enactment when we are considering references by either House of Congress to this court. These references are henceforth made under that code, and by section 151 thereof it is provided that the references contemplated may be made to this court for “ the investigation and determination of facts,” thus by its express language, more clearly than was theretofore expressed in either the Bowman or Tucker Act, evincing the purpose of the reference authorized by the statute. And this purpose being now distinct it follows that the conclusions of law which are desired are intended to be ancillary to the main purpose of the reference and, therefore, to be based upon the established principles of law. And it may be added that whether section 151 be considered as amendatory and a continuation of section 14 of the Tucker Act, or as a new enactment, it has by the inclusion therein of the words “ for the investigation and determination of facts ” and the elimination of the words in the Tucker Act directing the court to proceed in references thereunder “in accordance with the provisions of the” Bowman Act given emphasis to the intention that in every reference properly made there shall be an investigation and determination of facts and a report thereon unless by other parts of the Judicial Code a different procedure is directed, the exception so far as we are now advised being that class of claims covered by section 184.
The uniform construction given the Bowman Act in references under that act was that loyalty of the claimant was jurisdictional, and upon his failure to prove loyalty the *628 court dismissed his petition, making no report of the facts to either House of Congress.
A different construction was given the Tucker Act in references to the court thereunder, and loyalty of the claimant was not regarded as jurisdictional, Dowdy's ease and others cited, supra.
It hence follows that the court dismissed the petition or reported the facts where loyalty was not proven according as the reference was under the Bowman or Tucker Act.
The Judicial Code adopted in 1911, effective January 1, 1912, in its repealing provisions, sec. 297, declares that the Bowman Act is repealed, and a large part of the Tucker Act (all except sections 4, 5, 6, 7, and 10 thereof) is also repealed, the repeal including section 14. But there are reenacted several sections of the Bowman Act and a large part of the Tucker Act. For instance, section 151 of the Judicial Code is section 14 of the Tucker Act as amended June 25, 1910, 86 Stat. L., 837, with the changes above noted, and the proviso in section 151 is taken from the thirteenth section of the Tucker Act with some change of verbiage. Section 145 is a substantial reproduction of section 1 of the Tucker Act. Sections 184 and 185 of the Judicial Codé are the same as sections 4 and 5 of the Bowman Act relating to “ stores and supplies ” and make loyalty a jurisdictional fact in cases of •congressional references involving claims for stores and supplies.
It thus appears that a bill providing for the payment of a claim for stores and supplies when referred under the Tucker Act would, under the practice heretofore adopted in the court, be investigated, and the facts reported to Congress; whereas if a bill having a similar purpose be referred under the Judicial Code it would, upon a failure of the claimant to prove loyalty, be dismissed without any report of facts to Congress.
In view of the subsequent reenactment in the Judicial (Code of parts of the Bowman Act, as above shown, we may seriously consider whether the proper procedure in matters of reference heretofore made and yet unacted on under the Tucker Act should not be controlled by the method of pro *629 cedure prescribed for references under the Judicial (Code. The intention of Congress by the enactment of sections 184 and 185, and perhaps others of the Judicial Code, that loyalty in some cases shall be jurisdictional is clearly indicated, and to the end that there may be harmony of action in identical classes of claims sent under the Tucker Act or under the Judicial Code we may be called upon to determine whether the court should not take in references under the Tucker Act the same course it must now take in references of identically the same class of cases coming under the Judicial Code; as also whether the repeal of the Bowman Act does not deprive the court of any authority to act further upon references transmitted thereunder. Those questions are not directly before us here.
But section 299 of the Judicial Code saves certain rights which are not to be affected by the adoption of the Judicial Code. Whether this section is applicable to congressional references of bills to this court, qucere.
In the Sears case, referred under the Judicial Code, where the petition is based upon a claim for stores and supplies, the court will enter an order that loyalty is not proven, and therefore dismissing the petition, in accordance with sections 184 and 185 of the Judicial Code and because the enactment directs us so to do.
In the Parsons case the defendants’ motion for a new trial will be granted.
In the Lacy case the defendants’ motion for a new trial will be allowed.
In the other cases set out in the beginning of this opinion the motions to dismiss for want of jurisdiction will be overruled.

 Returning now to the chronological order of enactments we find that the act of March 3, 1863, was followed almost immediately by the abandoned or captured property act, approved March 12, 1863, 12 Stat. L., 820, which provided for special agents “ to receive and collect all abandoned or captured property In any State or Territory designated as in insurrection ” and “ that such property shall not include any kind or description which has been used or which was Intended to he used for waging or carrying on war against the united States, such as arms, ordnance ships, steamboats or other water craft, and the furniture, forage, military supplies, or munitions of war.”
By section 2 it was provided that any part of the goods or property received or collected by such agents could be appropriated to public use on due appraisement and certificate thereof or sold at public sale at some place within the loyal States “ and the proceeds thereof shall he paid into the Treasury of the united States.”
By section 3 it was provided inter alia that:
* * * “And any person claiming to have been the owner of any such abandoned or captured property may, at any time within two years after the suppression of the rebellion, prefer his claim to the proceeds thereof in the Court of Claims; and on proof to the satisfaction of said court of his ownership of said property, of his right to the proceeds thereof, and that he has *605 never given any aid or comfort to the present rebellion, to receive the residue of such proceeds, after the deduction of any purchase money which may have been paid, together with the expense of transportation and sale of said property, and any other lawful expenses attending the disposition thereof.”
By an act approved July 4, 1864, 13 Stat. L., 381, the jurisdiction of the Court of Claims was restricted, section 1 of the act providing:
“ That the jurisdiction of the Court of Claims shall not extend to or include any claim against the united States growing out of the destruction or appropriation of or damage to property by the Army or Navy, or any part ot the Army or Navy engaged in the suppression of the rebellion from the commencement to the close thereof.”
By sections 2 and 3 provision was made for settlement of claims for quartermaster’s stores actually furnished and claims for subsistence actually furnished, in both cases referring to claims of “ loyal persons in States not in rebellion,” and such claims were to be presented, accompanied -by proofs, to the Quartermaster General and the Commissary General of Subsistence, respectively, who were authorized to report the case for payment to the Third Auditor of the Treasury with a recommendation for settlement.
An act entitled “An act to extend the jurisdiction of the Court of Claims,” approved May 9, 1866 (14 Stat. L., 44), gave the court jurisdiction to hear and determine the claim of any paymaster, quartermaster, commissary of subsistence, or other disbursing officers on account of losses by capture or otherwise in the line of his duty and of Government funds, etc.
Congress then passed an act to declare the sense of the said act of July 4, 1864, which appears to have become a law without the President’s approval, it having been received by him February 9, 1867, 14 Stat. L., 497, and not having been returned by him to the House in which it originated. It was there declared that said act of July 4, 1864, should not he construed to authorize settlement of claims for supplies or stores taken or furnished for the use of or used by the armies of the united States, nor for the occupation of or injury to real estate, nor for consumption, appropriation, or destruction of or damage to personal property by the military authorities or troops of the united States, where the claim originated during the Civil war in a State or part of a State declared in insurrection by the proclamation of the President.
This was followed by the act above referred to entitled “An act to provide for appeals from the Court of Claims and for other purposes,” approved June 25, 1868, 15 Stat. L., 75, which authorized appeals and the granting of new trials, but forbade a claimant testifying; directed the Attorney General, with his assistants, to attend to the prosecution and defense of suits in said court on behalf of the united States; and allowed references to the court of matters by heads of the several departments. By section 3 of that act it is provided:
“ Sbo. 3. And he it further enacted, That whenever it shall be material in any suit or claim before any court to ascertain whether any person did or did not give any aid or comfort to the late rebellion, the claimant or party asserting the loyalty of any such person to the United States during such rebellion shp.ll be required to prove affirmatively that such person did, during said rebellion, consistently adhere to the united States and did give no aid or comfort to persons engaged in said rebellion; and the voluntary residence of any such person in any place, at any time during such residence, the rebel force or organization held sway shall be prima facie evidence that such person did give aid and comfort to said rebellion and to the persons engaged therein.”
By “An act regulating judicial proceedings in certain cases,” approved July 27, 1868, 15 Stat. L„ 243, it was declared that the true intent and meaning of the act of March 12, 1863 (the abandoned or captured property act), was that the remedy by preferring claims in the Court of Claims should be exclusive, precluding the owner of any property taken as abandoned or captured property from suit in any other court or tribunal than the Court of Claims.
*606 By an act approved March 3, 1883, 22 Stat. L., 485, entitled “An act to afford relief and assistance to Congress and to the executive departments in the investigation of claims and demands against the Government ” (which is commonly known as the Bowman Act), provision is made relative to claims as follows: “ That whenever a claim or matter is pending before any committee of the Senate or House of Representatives, or before either House of Congress, which involves the Investigation and determination of facts, the committee or House may cause the same, with the vouchers, papers, proofs, and documents pertaining thereto, to he transmitted to the Court of Claims of the united States, and the same shall there he proceeded in under such rules as the court may adopt. When the facts shall have been found the court shall not enter judgment thereon, hut shall report the same to the committee or to the House by which the case was transmitted for its consideration.”
Sections 3 and 4 are as follows:
“ Sec. 3. The jurisdiction of said court shall not extend to or include any claim against the united States growing out of the destruction or damage to property by the Army or Navy during the war for the suppression of the rebellion, or for the use and occupation of real estate by any part of the military or naval forces of the United States in the operations of said forces during the said war at the seat of war; nor shall the said court have jurisdiction of any claim against the united States which Is now barred by virtue of the provisions of any law of the United States.
“ Sec. 4. In any case of a claim for supplies or stores taken by or furnished to any part of the military or naval forces of the United States for their use during the late war for the suppression of the rebellion, the petition shall aver that the person who furnished such supplies or stores, or from whom such supplies were taken, did not give any aid or comfort to said rebellion, but was throughout that war loyal to the Government of the United States, and the fact of such loyalty shall be a jurisdictional fact; and unless the said court shall, on a preliminary inquiry, And that the person who furnished such supplies or stores, or from whom the same were taken as aforesaid, was loyal to the Government of the United States throughout said war, the court shall not have jurisdiction of such cause, and the same shall, without further proceedings, be dismissed.”
By section 5 the Attorney General or his assistants under his direction are directed to appear for the defense and protection of the interests of the United States in all cases transmitted to-the Court of Claims under this act.
*607 The next act in sequence is that of March 3, 1887, called the Tucker Act, 24 Stat. L., 505, entitled “An act to provide for the bringing of suits against the Government of the united States.” It is provided “that the Court of Claims shall have Jurisdiction to hear and determine the following matters ”:
“ First. All claims founded upon the Constitution of the united States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the Government of the united States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the united States either in a court of law, equity, or admiralty if the united States were suable: Provided, however, That nothing in this section shall be construed as giving to either of the courts herein mentioned Jurisdiction to hear and determine claims growing out of the late Civil War and commonly known as 1 war claims,’ or to hear and determine other claims which have heretofore been rejected or reported on adversely by any court, department, or commission authorized to hear and determine the same.
“ Second. All set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court: Provided, That no suit against the Government of the United States shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made.”
Provision is made for procedure, for the rendition of judgment, for appeals therefrom, and the jurisdiction is extended to equity and admiralty causes against the United States.
By section 13 it is provided: “ That in every case which shall come before the Court of Claims, or is now pending therein, under the provisions of an act entitled ‘ An act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the Government,’ approved March third, eighteen hundred and eighty-three, if it shall appear to the satisfaction of the court, upon the facts established, that it has jurisdiction to render judgment or decree thereon under existing laws or under the provisions of this act, it shall proceed to do so, giving to either party such further opportunity for hearing as in its judgment justice shall require, and report its proceedings therein to either House of Congress or to the department by which the same was referred to said court.”